UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL M. McDONOUGH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    2:15-cv-00153-JDL |
| | ) |
| CITY OF PORTLAND, | ) |
| | ) |
|     Defendant. | ) |

**ORDER ON MOTIONS TO INTERVENE AND MOTIONS TO DISMISS**

This is a reverse discrimination claim brought by Paul M. McDonough, a taxicab driver, against the City of Portland, which was removed from the Maine Superior Court. ECF No. 3-2. Two additional parties, the Airport Taxi Group and the Non-Reserved Taxi Group, Inc. ("NRTG"), have each filed motions to intervene and to dismiss. For the reasons discussed below, NRTG's motions to intervene (ECF No. 3-20) and dismiss (ECF No. 3-23) are granted. The Airport Taxi Group's motions to intervene (ECF No. 3-5) and dismiss (ECF No. 3-6) are denied as moot.

**I. FACTUAL BACKGROUND**

McDonough is an American-born, Caucasian taxi driver. He holds a City of Portland taxi permit, but that permit does not allow him to collect passengers at the Portland International Jetport who have not made prior reservations. Only drivers who hold a Portland non-reserved Jetport taxicab permit ("non-reserved permit") may pick up passengers without a reservation at the Jetport. ECF No. 3-17 at 1.

McDonough alleges that all of the current non-reserved permits are held by non-white immigrants from Somalia or Iran, and that Portland discriminated against him and "all other non-black, non-immigrant Portland taxicab drivers" by allegedly allocating all non-reserved permits to "non-Caucasian immigrants." *Id*. at 2.

McDonough filed his initial complaint on December 30, 2014 in the Cumberland County Superior Court, alleging one count of disparate impact discrimination in violation of the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551, *et seq*. (2014). ECF No. 3-2. In its answer, Portland admitted that the taxi drivers who hold non-reserved permits are primarily black and that their national origin is primarily Somali or Iranian, but asserted that this "occurred by happenstance," and otherwise denied McDonough's allegations. *See* ECF No. 3-3 at 2.

On February 4, 2015, the Airport Taxi Group, an unincorporated association of taxi drivers who hold non-reserved permits, filed motions to intervene and to dismiss the sole count contained in the initial complaint. ECF No. 3-5; ECF No. 3-6. McDonough objected on the basis that an unincorporated association may not intervene in a civil action and that the Airport Taxi Group was not a real party in interest. ECF No. 3-7 at 2.

The Airport Taxi Group countered that an unincorporated organization is a "person" within the meaning of § 4553(7) of the MHRA. ECF No. 3-11 at 1. Nevertheless, its membership subsequently formed a new, incorporated entity, NRTG, which filed new motions to intervene and to dismiss "in place of [the] Airport

2

Taxi Group" on April 2nd. ECF No. 3-20; ECF No. 3-23. NRTG's motions incorporate by reference the same legal arguments presented in the Airport Taxi Group's motions to intervene and dismiss.[1]

McDonough filed an amended complaint on March 27, 2015, in which he alleged claims for intentional and disparate impact discrimination by Portland in violation of § 4592(1) of the MHRA, which prohibits denial of public accommodations on account of race (Counts One and Two). ECF No. 3-17 at 3-5. McDonough also alleged that Portland discriminated against him in violation of 42 U.S.C. § 1983 (Count Three) and 42 U.S.C. § 1981 (Count Four). *Id.* at 5-6. In its Answer to the amended complaint, Portland again admitted that "primarily the race of the current non-reserved permit holders is black and their national origin is Somali and/or Iranian," ECF No. 3-21 at 2, but otherwise denied McDonough's allegations, *see* ECF No. 3-21.

## II. MOTIONS TO INTERVENE

NRTG's motion to intervene was filed pursuant to Maine Rule of Civil Procedure 24(a)(2). ECF No. 3-5. The Maine rule is "virtually the same" as Federal Rule of Civil Procedure 24(a)(2), *Doe v. Roe*, 495 A.2d 1235, 1237 n.4 (Me. 1985), and I consider the motions pursuant to the federal authority concerning intervention.

Federal Rule 24(a)(2) requires a party to show that: (1) it timely moved to intervene; (2) it has an interest relating to the property or transaction that forms the

---

[1] I therefore consider NRTG to be the proposed intervenor, in place of the Airport Taxi Group, and, when discussing NRTG's arguments for intervention and dismissal, I reference the Airport Taxi Group's motions to intervene (ECF No. 3-5) and to dismiss (ECF No. 3-6).

basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protect its interests; and (4) no existing party adequately represents its interests. *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006) (citing *Pub. Serv. Co. of N. H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)). "The failure to satisfy all four conditions dooms intervention." *Id.* at 545 (quoting *Patch,* 136 F.3d at 204) (punctuation omitted).

McDonough does not dispute that NRTG's motion is timely, nor that the disposition of the action threatens to create a practical impediment to NRTG's ability to protect any interest. *See* ECF No. 3-7 at 2. Instead, he objects that NRTG does not have an adequate property interest in the current permit system, *id.* at 3, and that Portland is already adequately representing whatever interest NRTG does have, *id.* at 4-7.

## A.     Interest in the Subject Matter of the Litigation

The First Circuit has held that "there is no precise and authoritative definition of the interest required to sustain a right to intervene" under Rule 24(a)(2). *Conservation Law Found. of New England, Inc. v. Mosbacher,* 966 F.2d 39, 42 (1st Cir. 1992). However, "the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants." *Id.* (quotation omitted).

NRTG claims to have a substantial interest in this litigation because its members hold the very taxi permits that McDonough seeks to invalidate. ECF No. 3-5 at 3. Without these permits, NRTG's members "cannot operate non-reserved taxi service" at the Jetport, "a direct and substantial interest." *Id.*

4

For support, NRTG cites *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31 (1st Cir. 2000), an analogous case in which white police officers who were passed over for promotion brought a reverse discrimination claim against the city of Boston. A group of minority police officers whose promotions were being challenged sought to intervene, but their motion was denied by the trial court. *Id.* at 33. The First Circuit vacated the denial, holding that the minority officers satisfied the "adequate interest" prong of Rule 24(a)(2), and stating that "to say that an officer has no interest in defending his own promotion would be to defy common sense." *Id.* at 34-35.

McDonough concedes that NRTG's members financially benefit from the current taxi permitting system, but argues that they have no property interest in their permits because "the taxi permits, like all City permits, may be revoked at any time by the City." ECF No. 3-7 at 3. His argument consists of one paragraph and does not cite to any supporting authority. *See id.*

NRTG has satisfied the adequate interest prong. Rule 24 merely requires that an intervenor have "an interest *relating to* the property or transaction" that forms the basis of the litigation in question. Fed. R. Civ. P. 24(a)(2) (emphasis added). It is a fairly low bar for a corporation consisting exclusively of non-reserved permit holders to establish that it has an interest *relating to* litigation in which McDonough seeks to invalidate the entire permitting scheme. *See* ECF No. 3-17 at 6. I conclude that NRTG has an adequate interest for purposes of Rule 24(a)(2).

### B.     Adequate Representation

If the intervenor has the "same ultimate goal" as an existing party, then there is a presumption of adequate representation. *Nextel Commc'ns of Mid-Atlantic, Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 151 (D. Mass. 2004) (citing *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982)). "The strength of this presumption is 'ratcheted upward' when the intervenor attempts to enter on the same side as a government agency to defend the agency's decision." *Id.* (quoting *Patch*, 136 F.3d at 207). The burden of overcoming this presumption is on the intervenor. *Id.* (citing *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999)). However, this burden is not onerous—the intervenor need only show that the government's representation *may* be inadequate, not that it *is* inadequate. *Mosbacher*, 966 F.2d at 44. "One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." *Fernández,* 440 F.3d at 546 (citing *Glancy v. Taubman Cts., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004)) ("Asymmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee.") (other citation omitted).

NRTG argues that Portland's representation may be inadequate because it has "a materially different stake in the outcome of this case." ECF No. 3-5 at 5. It claims that the livelihoods of its membership are at stake in the litigation, while what is at stake for Portland is a change in its taxi licensing scheme. *Id.* NRTG contends that these interests "differ[] in kind and quality." *Id.* NRTG also argues that Portland

6

faces internal and external institutional and political pressure that could influence how it litigates the case, and not necessarily in ways that protect the interests of NRTG's members. *Id.*

McDonough concedes that current permit holders "benefit from the City's current permit system in a way the City itself does not: they drive cabs and earn money from these activities, not the City." ECF No. 3-7 at 6. He also concedes that this "may be a difference in 'kind and quality'" of interest, but nevertheless contends that NRTG is not entitled to intervene because "*every* holder of *every* City license or permit of *every* kind is in a different position from the City itself[.]" *Id.* McDonough dismisses NRTG's argument that institutional and political pressures could influence the adequacy of Portland's representation because "this difference does not prove the City is not an adequate representative[.]  *Id.* at 7.

NRTG has the better argument. It is apparent that its interests are sufficiently different from Portland's and that Portland's representation *may* be inadequate because Portland must account for a spectrum of governmental interests far broader than the discrete commercial interests NTRG seeks to protect. *Mosbacher* requires only that an intervenor show that the government's representation *may* be inadequate, not that it *is* inadequate. 966 F.2d at 44. NRTG has made that showing here.

C.    **Real Party In Interest**

McDonough also argues the Airport Taxi Group is not a "real party in interest" under Maine Rule of Civil Procedure 17(a) because "[t]he individual members of the

group are the permit holders and the real parties in interest," and not the Airport Taxi Group, which "is not a permit holder and has no legal interest in any City permit." ECF No. 3-7 at 2. The crux of McDonough's argument is based on the Airport Taxi Group's status as an unincorporated association. *See id.* This argument is foreclosed by the subsequent incorporation of NRTG and its motion to intervene (ECF No. 3-20). NRTG's Articles of Incorporation establish that it has "one class of members consisting of all persons holding non-reserved airport Access Permits issued by the City of Portland at the time of [NRTG's] formation." ECF No. 3-20 at 9. Because NRTG's membership comprises "all persons" who hold a non-reserved permit, it is a real party in interest.

**D.   Conclusion**

Accordingly, NRTG's motion to intervene (ECF No. 3-20) is **GRANTED.** The Airport Taxi Group's motion to intervene (ECF No. 3-5) is **DENIED AS MOOT.**

### III.  MOTIONS TO DISMISS

NRTG argues that Portland's regulations governing non-reserved airport taxi service are not a "public accommodation" under the MHRA, and therefore, McDonough has failed to state a claim upon which relief can be granted with respect to Count Two of the Amended Complaint.[2]  ECF No. 3-6 at 4.

---

[2] The sole claim contained in the initial complaint (ECF No. 3-2) was for disparate impact discrimination under the MHRA. That claim is contained in Count Two of the amended complaint (ECF No. 3-17). Because NRTG's motion to dismiss was directed at the initial complaint, I construe its argument for dismissal as applicable to Count Two of the amended complaint.

A.     **Public Accommodations Under the MHRA**

The MHRA declares it a civil right that "every individual . . . have equal access to places of public accommodation without discrimination because of race . . . or national origin," 5 M.R.S.A. § 4591, and prohibits "[d]enial of public accommodations . . . on account of race or . . . national origin," 5 M.R.S.A. § 4592(1). The MHRA defines a "public accommodation" as a "public or private entity that owns, leases, leases to or operates a place of public accommodation," 5 M.R.S.A. § 4553(8-B), and defines a "place of public accommodation" as "a facility, operated by a public or private entity, whose operations fall within at least one of the following categories . . . [a]ll public conveyances operated on land or water or in the air as well as a terminal, depot or other station used for specified public transportation," 5 M.R.S.A. §§ 4553(8); 4553(8)(G).

NRTG argues that what McDonough is challenging—the non-reserved permit regulations—do not restrict McDonough's right of access to a "place of public accommodation" since the MHRA defines a "place of public accommodation" as a "facility," i.e., "real or personal property . . . where [a] building, property, structure, or equipment is located." ECF No. 3-6 at 4-5 (quoting 5 M.R.S.A. § 4553(8); 94-348 C.M.R. ch. 7, § 7.01). In other words, "a permit is not a place . . . and as such is not subject to the [MHRA's] provisions governing public accommodations." ECF No. 3-10 at 1 (punctuation omitted).

For support, NRTG cites *Jackson v. State of Maine*, 544 A.2d 291, 295 (Me. 1988), in which the Law Court held that "the ability to obtain a license and to operate

9

on the public highway" was not "within the right of access to public accommodation protected by the [MHRA.]" The Law Court also stated that "the definition contained in 5 M.R.S.A. § 4553(8) . . . reveals an obvious emphasis on some physical space or establishment offering goods, facilities or services to the general public," *id.*, and that it "would not consider a licensing, permitting or regulating function of government to be within that definition without a clear expression of such a legislative purpose," *id.* at 296. NRTG argues that the Legislature has not subsequently amended the MHRA to expand the definition of "public accommodation," and therefore the Law Court's restrictive interpretation remains authoritative. ECF No. 3-6 at 6.

McDonough responds that he "is *not* challenging the City of Portland's taxi permit system in general or the City's permitting functions in general," and that NRTG's reliance on *Jackson* is inapposite. ECF No. 3-8 at 4. Rather, McDonough argues, Portland has restricted his access to the Jetport itself, and therefore he is challenging "discriminatory restrictions on taxicab access to the [Jetport], a place of public accommodation." *Id.*

McDonough's argument makes a distinction without a difference. Portland has not prevented McDonough from entering and making use of the Jetport. Rather, Portland's permitting requirements restrict him from offering non-reserved taxi service at the Jetport. McDonough's claim, as framed in the amended complaint, focuses squarely on Portland's permitting and regulations: he alleges that he "has been and remains barred by the City of Portland's policy and rules from accessing the Jetport to solicit business from non-reserved customers." ECF No. 3-17 at 3.

10

Notwithstanding McDonough's assertion to the contrary, Portland's taxi permitting system is precisely what he is challenging, and, in keeping with *Jackson*, that system is not a place of public accommodation protected by the MHRA.

**B.    Conclusion**

Based upon the Law Court's decision in *Jackson*, I conclude that Portland's regulations governing the non-reserved Jetport taxi permits are not a public accommodation.  *See Jackson*, 544 A.2d at 295-96.  Therefore, those regulations do not give rise to a claim for disparate impact discrimination in access to a place of public accommodation under the MHRA.  Count Two of the Amended Complaint thus fails to state a claim upon which relief can be granted.[3]

Accordingly, NRTG's motion to dismiss (ECF No. 3-23) is **GRANTED** and Count Two of the Amended Complaint (ECF No. 3-17) is **DISMISSED.**  The Airport Taxi Group's motion to dismiss (ECF No. 3-6) is **DENIED AS MOOT.**  Counts One, Three, and Four of the Amended Complaint remain pending.

SO ORDERED.

This 16th day of June 2015.

/s/ Jon D. Levy
**U.S. District Judge**

---

[3] I do not address Count One of the Amended Complaint because, at a status conference held on May 13, 2015, counsel for NRTG stated that it seeks dismissal of Count Two only.