UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL M. McDONOUGH, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) No. 2:15-cv-153-JDL |
| | ) |
| CITY OF PORTLAND, | ) |
| | ) |
| Defendant | ) |

*MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE*

During a discovery teleconference on December 3, 2015, I directed the parties to file simultaneous letter briefs, with an opportunity for simultaneous responses, regarding a dispute over the defendant's attorney's invocation of legislative privilege during the deposition of Portland City Councilor Kevin Donoghue and instruction that he not answer the questions at issue. *See* ECF No. 37. With the benefit of those briefs, *see* [Defendant's Brief] (ECF No. 38); [Plaintiff's Brief] (ECF No. 39); [Defendant's Resp.] (ECF No. 40); [Plaintiff's Resp.] (ECF No. 41), and treating the Plaintiff's Brief as a motion to compel Donoghue's answers, I deny it for the following reasons.

**I.     Applicable Legal Standards**

Federal Rule of Civil Procedure 30 provides, in relevant part, that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). In accordance with Federal Rule of Civil Procedure 37 and Local Rule 26, I directed the filing of what is, in effect, a written discovery motion following the parties' exhaustion of good-faith efforts to resolve their dispute. *See* ECF No. 37; Fed. R. Civ. P. 37(a)(1) & (3)(B)(i); Loc. R. 26(b).

1

For federal legislators, "[l]egislative immunity and legislative privilege . . . derive from the Speech and Debate Clause of the United States Constitution[,] which provides that, 'for any Speech or Debate in either House, they [Members of Congress] shall not be questioned in any other Place.'" *Bethune-Hill v. Virginia State Bd. of Elections*, Civil Action No. 3:14cv852, 2015 WL 3404869, at *3 (E.D. Va. May 26, 2015) (quoting U.S. Const. art. I, § 6, cl. 1). "The Speech and Debate Clause was designed to assure a coequal branch of the government wide freedom of speech, debate, and deliberation and has been read as a means to protect the legislative process and prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Id*. (citation and internal quotation marks omitted). "Thus, two important principles animate legislative immunity at the federal level: (1) the separation of powers, and (2) the protection of the legislative process." *Id.*

The extension of legislative immunity and legislative privilege to state and municipal legislators is not founded on the United States Constitution. *See id*. at *6. Rather, when a state or municipal legislator seeks to invoke legislative privilege in federal court with respect to a federal claim, "[t]he common law – as interpreted by United States courts in the light of reason and experience – governs [the] claim of privilege[.]" Fed. R. Civ. P. 501; *see also, e.g., In re Hubbard*, 803 F.3d 1298, 1307-08 (11th Cir. 2015). "[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Civ. P. 501.

In this case, the plaintiff asserts both federal and state claims of discrimination on the basis of race and national origin. *See* Amended Complaint (ECF No. 3-17), attached to Affidavit of Edward R. Benjamin, Jr. (ECF No. 3). Pursuant to both Maine law and federal common law, a municipal lawmaker may invoke a legislative privilege. *See, e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp*., 429 U.S. 252, 268 & n.18 (1977); *Dobbs v. Maine Sch. Admin.*

*Dist. No. 50*, 419 A.2d 1024, 1029 (Me. 1980). However, the privilege, when invoked by a state or municipal lawmaker, is a qualified one:

> The concept of legislative privilege arises from, and is often discussed interchangeably with, the concept of legislative immunity. Legislative immunity, which provides absolute immunity from suit, has been extended to protect local legislators from suit for acts taken in their legislative capacity. As to the legislative privilege, the purpose in preventing inquiry into motivation of legislative acts is to shield legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the public good. The Supreme Court has, however, rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege. The legislative privilege is qualified, not absolute, and must therefore depend on a balancing of the legitimate interests on both sides.

*ACORN (N.Y. Ass'n of Comty. Orgs. for Reform Now) v. County of Nassau*, No. CV 05-2301(JFB)(WDW), 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007) (citations, internal quotation marks, and footnote omitted). Specifically, "the court must balance the extent to which the production of the disputed evidence would have a chilling effect on the [municipal lawmaker] against those factors favoring disclosure." *Id*.

> Among the factors that a court should consider in arriving at such a determination are: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.*[1]

The privilege protects actions that are legislative, rather than administrative, in nature. *See, e.g., Favors v. Cuomo* ("*Favors II*"), No. 11-CV-5632(DLI)(RR)(GEL), 2015 WL 7075960, at *6 (E.D.N.Y. Feb. 8, 2015). In the related context of legislative immunity, the First Circuit has applied a two-part test to draw that distinction:

---

[1] The parties have drawn no distinction between the legal standard applicable to invocation of legislative privilege pursuant to Maine law and that applicable pursuant to federal common law. *See generally* Plaintiff's Brief; Defendant's Brief. In the absence of citation to any authority to the contrary, I follow suit.

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are legislative facts, such as generalizations concerning a policy or state of affairs, then the decision is legislative. If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the particularity of the impact of the state of action. If the action involves establishment of a general policy, it is legislative; if the action singles out specifiable individuals and affects them differently from others, it is administrative.

*Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir. 1992) (citation and internal punctuation omitted).

The privilege may be invoked regardless of whether a legislator has been sued. *See, e.g., Hubbard*, 803 F.3d at 1310 ("The legislative privilege protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*. One of the privilege's principle purposes is to ensure that lawmakers are allowed to focus on their public duties. That is why the privilege extends to discovery requests, even when the lawmaker is not a named party in the suit: complying with such requests detracts from the performance of official duties.") (citations, internal quotation marks, and footnote omitted) (emphasis in original).

## II.     Factual Backdrop

In 1995, the City of Portland ("City") promulgated Ground Transportation Rules and Regulations ("GTRR") for the Portland International Jetport ("Jetport") that, among other things, required that taxi drivers have a permit to queue at the Jetport and wait for fares (so-called "non-reserved," or NRT, fares). *See* Defendant's Brief at 2. In 2008, to address overcrowding, the Jetport administration decided to stop issuing new NRT permits. *See id*. In 2009, to address overcrowding, Jetport Director Paul Bradbury proposed that a single contractor provide NRT service at the Jetport, to be selected through a request for proposals ("RFP") process. *See id*. The proposal was presented to both the City Council and the Transportation Committee, of which Donoghue was a member, but was not adopted. *See id*. The City amended its GTRR in 2010 to

4

set a cap of 40 NRT permits to be reached over time by attrition, and again in 2013 to create elimination lotteries to be held among existing NRT permit holders if permit numbers exceeded certain caps on certain dates. *See id*. Both the 2010 and 2013 versions of the GTRR provided for the holding of an open lottery among all interested licensed taxi drivers once the number of NRT permits fell below 40. *See id*. Both the 2010 and 2013 amendments were made by the rulemaking authority of the airport director after presenting proposals to the City Council and the Transportation Committee and after the City Council heard testimony from interested parties. *See id*. Bradbury testified that, although he had authority to promulgate changes to the GTRR, he sought City Council input because of the City Manager's ability to disapprove rules posted by the airport director. *See id*. at 2-3.

The plaintiff, a Caucasian taxi driver, claims that "[a]t some time during the period 2003 - 2008" the City "intentionally discriminated against [the plaintiff] and all other non-black, non-immigrant Portland taxicab drivers by allocating all of the Jetport non-reserved taxicab permits to Somalis and/or other non-Caucasian immigrants" and has continued to do so since then. Amended Complaint ¶¶ 2-9. He points, *inter alia*, to:

1.  Bradbury's decision to withdraw his 2009 single contractor proposal in the wake of opposition from the City Council allegedly predicated on concern about the impact on existing NRT permittees, most, if not all, of whom were black Somali immigrants. *See* Plaintiff's Brief at 2.

2.  The City's decision in August 2010 to revise the GTRR in such a manner as to perpetuate the Somali NRT permit monopoly despite a proposal in early 2010 by Judy Harris, who worked closely with Bradbury, to establish a lottery that would allow all City-licensed taxicab owners to apply for the 50 NRT permits. *See id*.

5

3. The City's decision in 2013 to revise the GTRR in such a manner as to perpetuate the "*de facto* monopoly" for another four years after Bradbury had proposed a series of lotteries beginning in March 2013 to reduce the number of NRT permits to 40 and make them accessible to all owners. *See id.*

The plaintiff deposed City Councilor Donoghue on November 9, 2015. *See* Deposition of Kevin Donoghue ("Donoghue Dep.") (ECF No. 39-1), attached to Plaintiff's Brief, at 1. On 15 occasions, the defendant's attorney objected on the ground of legislative privilege and instructed Donoghue not to answer. *See* Defendant's Brief at 3. Among the questions with respect to which the privilege was invoked were the following:

1. "What was your opinion about this proposal [the 2009 Bradbury proposal] when you read [an August 14, 2009] memo [from Bradbury to the Transportation Committee]?" Donoghue Dep. at 24 & Exh. 2 thereto (at Page ID #247).

2. "[W]hose decision was it that no action [by the Transportation Committee] was required [with respect to the 2009 Bradbury memorandum]?" Donoghue Dep. at 29; Exh. 2 thereto.

3. "[T]his [2009] email from you to Paul Bradbury, would it be fair to say that you were concerned with the impact of his proposal on the Somali cab drivers at the airport?" Donoghue Dep. at 40; Exh. 5 thereto (at Page ID ##253-55).

4. "[W]hen it says 'without displacing people' [in minutes describing Donoghue's comments during a July 18, 2012, meeting of the Transportation Committee], I take it your concern was obviously if the numbers were reduced from approximately 50, there would be some displaced Somali cab drivers?" Donoghue Dep. at 96; Exh. 24 thereto (at Page ID ##272-73).

On Friday, November 6, 2015, the defendant's counsel informed the plaintiff's counsel by email that she intended to invoke the legislative privilege, with an instruction not to answer, during depositions scheduled for the coming week. *See* Defendant's Brief at 1. The plaintiff's attorney responded by email on November 7, stating that he saw no basis for the objection and asking for legal authority. *See id*. The defendant's attorney responded that day, providing some citations to authority. *See id*.

The plaintiff's and defendant's attorneys had limited exchanges regarding the invocation of the privilege during the depositions that week of Donoghue and Portland City Councilor Jill Duson. *See id*. 2. (No issue is raised with respect to the invocation of the privilege during Duson's deposition.) Discovery closed on November 13, 2015. *See* ECF No. 14 at 2. Local Rule 56(h) notices were due on November 20, 2015. *See id.* The plaintiff filed a Rule 56(h) notice of intent to file for summary judgment on October 2, 2015, *see* ECF No. 23, and the defendant, as well as intervenor Non-Reserved Taxi Group, Inc., both filed such notices on November 16, 2015, *see* ECF Nos. 29, 31.

During a teleconference with the parties on November 23, 2015, regarding the plaintiff's motions to extend time to respond to the intervenor's request for admissions and to file dispositive motions, the plaintiff's attorney first raised the issue that "the plaintiff may wish to seek the court's assistance in resolving a dispute over the defendant's attorney's instruction, during two of four depositions of city witnesses, not to answer questions on account of legislative privilege." ECF No. 33 at 5. "I expressed concern that this matter was being brought to the court's attention following the close of the parties' discovery deadline." *Id*. However, I directed that the parties meet and confer in a good-faith attempt to resolve the dispute, failing which they should email the court no later than November 30, 2015, for assistance. *See id*. at 5-6.

The plaintiff's attorney emailed the court seeking its assistance on November 24, 2015. *See* Plaintiff's Resp. at 2. I scheduled a teleconference with counsel on December 3, 2015, resulting in my directive that the parties file letter briefs on this issue. *See* ECF No. 37.

The court has refrained from scheduling a Rule 56(h) conference with counsel in view of the plaintiff's motions to extend time, which were the subject of my November 23, 2015, teleconference with counsel, and the instant discovery dispute.

### III.   Discussion

The plaintiff argues, as a threshold matter, that because the defendant by its own admission waived the invocation of any privilege as to its production of documents, it necessarily also waived invocation of that privilege as to any questioning regarding those documents. *See* Plaintiff's Brief at 2. He argues, in the alternative, that the five-factor balancing test counsels in favor of overruling the privilege with respect to the questions at issue. *See id*. at 3-5. He requests that the court direct that the Donoghue deposition be reopened and order Donoghue to answer those questions. *See id*. at 5.

The defendant argues, as a threshold matter, that the plaintiff waived his objection to its invocation of the legislative privilege by failing to raise the issue in a timely fashion. *See* Defendant's Brief at 1-2. In the alternative, it argues that Donoghue's subjective intent and motivations are irrelevant, that the privilege applies to the subject matter at issue, that Donoghue never waived the privilege, and that application of the five-factor balancing test counsels in favor of sustaining the privilege. *See id.* at 3-5.

I agree that the plaintiff waived his objection to the invocation of the legislative privilege by failing to raise the issue in a timely manner. In the alternative, I find that the privilege applies and was not waived, and I sustain it based on the application of the five-factor balancing test.

### A. Untimeliness of Objection

The defendant points out that, although Local Rule 26(b) does not provide a time frame for raising discovery disputes, it mandates that a party with a discovery dispute confer with the opposing party in an attempt to resolve the dispute and, if unsuccessful, "seek a prompt hearing" with the court. *See id.* at 2 (quoting Loc. R. 26(b)). The defendant contends that the plaintiff's delay in raising the instant dispute, while not lengthy, was unreasonable in the circumstances, given that discovery closed on November 13, 2015, but the plaintiff's attorney raised no issue with the court until November 23, 2015. *See id.*

The plaintiff protests that, before the plaintiff's attorney could intelligibly present the issue to the court, he needed to review the transcript of Donoghue's deposition, which arrived while the plaintiff's attorney was away from his office on November 18, 2015, and which he did not have an opportunity to review until Friday, November 20, 2015. *See* Plaintiff's Resp. at 2. He then raised the issue at the conclusion of the Monday, November 23, 2015, teleconference with the court. *See id.* He reasons, "If the Court had felt that [the plaintiff's attorney] had proceeded in an untimely fashion and thereby waived the argument, [the plaintiff's attorney] can only assume that [the court] would have said so on November 23 when [he] first raised the issue." *Id.* The plaintiff adds that, because the deposition transcript was not prepared until a week and a half after the deposition, and there could have been no serious consideration of the issue absent the transcript, the issue was very promptly raised and briefed. *See id.*

As the defendant's attorney acknowledged, the plaintiff's delay in raising this issue was not a lengthy one. Yet, in these circumstances, it was not sufficiently prompt. Despite knowing as of November 9, 2015, that the parties had a concrete dispute over the issue, the plaintiff did not call it to the court's attention prior to the expiration of the discovery deadline on November 13, 2015, or file a motion prior thereto to extend that deadline for the purpose of allowing the

9

resolution of that dispute with the benefit of the transcript and reopening Donoghue's deposition if he were to prevail. Moreover, as of November 16, 2015, in accordance with the scheduling order, all three parties had filed Local Rule 56(h) notices. The court has held the scheduling of a Local Rule 56(h) conference in abeyance pending the resolution of the instant dispute.

That I did not make this ruling on November 23, 2015, did not signal agreement with the plaintiff's position. When the plaintiff's attorney stated, at the conclusion of the November 23, 2015, teleconference, that the plaintiff *might* require the court's assistance in resolving the dispute, I expressed concern that the plaintiff had raised the issue subsequent to the expiration of the discovery deadline. *See* ECF No. 33 at 5. It would have been inappropriate for me to rule at that time, as it appeared that the parties had not exhausted their Local Rule 26(b) obligation to confer in good faith to attempt to resolve the issue privately. Hence, I directed them to do so. *See id*. Those efforts failed, and since then, the defendant has consistently pressed the issue of the untimeliness of the objection. *See* ECF No. 37 at 2; Defendant's Brief at 1-2. The defendant is correct that, in these circumstances, the objection was untimely raised. That, in itself, is sufficient reason to deny the motion to compel.

### B. Merits of Motion

In the alternative, I rule in favor of the defendant on the merits.

<u>First</u>, the *defendant's* provision of documents in discovery did not waive *Donoghue's* testimonial privilege. "The legislative privilege is a personal one and may be waived or asserted by each individual legislator." *ACORN*, 2007 WL 2815810, at *4 (citation and internal quotation marks omitted).

<u>Second</u>, the privilege applies to the subject matter at issue even though the City Council never took any challenged vote. Bradbury presented proposals to the City Council and/or its Transportation Committee for vetting and input as part of the rule-making process. In providing

that feedback, the Councilors addressed policy matters rather than specific individuals, applications, or requests. The legislators' acts, hence, were legislative, rather than administrative, in nature. *See, e.g., Favors II*, 2015 WL 7075960, at *8 (listing, among materials that are legislative in nature and to which a qualified legislative privilege extends, "materials prepared in connection with . . . committee meetings and reports," and "consideration of public proposals").

Third, and finally, application of the five-factor test tips the balance in favor of sustaining the privilege.

1. *Relevance*. The defendant argues that the information sought is irrelevant, both because the plaintiff's attorney indicated during the December 3, 2015, teleconference that the plaintiff did not challenge any action by the City Council and because the 2009 Bradbury proposal, which was the subject of 11 of the challenged questions, was rejected and is irrelevant to the GTRR provisions at issue. *See* Defendant's Brief at 3. Yet, while the plaintiff concedes that there is no relevant vote by the City Council, he makes clear that he generally challenges the City's conduct regarding the NRT system for the period at issue, including the role played by City Councilors in the failure of various reform proposals floated by Bradbury. *See* Plaintiff's Resp. at 2-3; Amended Complaint ¶¶ 8-16. Donaghue's testimony is relevant. This factor, hence, favors the plaintiff.

2. *Availability of Other Evidence*. Tellingly, the plaintiff does not argue that the evidence sought to be gleaned from Donaghue is otherwise unavailable. Rather, he argues that "the availability of other evidence does not render the evidence sought irrelevant, 'given the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority.'" Plaintiff's Brief at 4 (quoting *Veasey v. Perry*, Civil Action No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014)). As the defendant argues, *see* Defendant's Brief at 2, the plaintiff's

delay in raising this discovery dispute suggests that the information sought is insufficiently important to overcome the legislative privilege. In short, while the plaintiff demonstrates that the Donoghue evidence that he seeks is relevant, he does not show that it is essential. The *ACORN* court described this factor, along with the seriousness of the litigation, as the two most significant factors in weighing the plaintiffs' needs in that case against "a legislator's need to be free to act without worry about inquiry into deliberations." *ACORN*, 2007 WL 2815810, at *3. Here, as in *ACORN*, the availability of other evidence, including substantial documentary evidence already made available to the plaintiff, strongly favors the defendant. *See id*.

       3.     *Seriousness of Litigation and Issues Involved*. The plaintiff contends that this factor favors him, in that racial discrimination, and the loss of rights conferred by the Equal Protection Clause, are of "cardinal importance." Plaintiff's Brief at 4 (citation and internal quotation marks omitted). He notes, *see id.* at 3, that in *Bethune-Hill*, the United States District Court for the Eastern District of Virginia stated that the legislative privilege "becomes qualified" when individual legislators are not being sued and when invocation of the privilege "stands as a barrier to the vindication of important federal interests and insulates against effective redress of public rights[,]" *Bethune-Hill*, 2015 WL 3404869, at *7. He asserts that *Bethune-Hill* "is on all fours" with *East End Ventures, LLC v. Incorporated Vill. of Sag Harbor*, No. CV 09-3967(LDW)(AKT), 2011 WL 6337708 (E.D.N.Y. Dec. 19, 2011), which emphasized that "the privilege . . . may be inapplicable where the legislative deliberations are among the central issues in the case." Plaintiff's Brief at 5 (quoting *East End*, 2011 WL 6337708, at *3).

      The defendant rejoins that the court in *East End* erroneously imported the "central issues" exception, which applies in the context of the separate deliberative process privilege, into this context. *See* Defendant's Brief at 4; Defendant's Resp. at 2. In any event, the defendant argues,

no central issues exception is implicated here, where Council action is not a central issue. *See* Defendant's Resp. at 2.

The plaintiff raises an issue of great importance. However, I agree with the defendant that the central issues exception is misapplied as a matter of law in the context of invocation of the legislative privilege, at least insofar as it applies to testimony.

The importation of the central issues exception into the legislative privilege context to compel a state or municipal legislator's testimony as to his or her thoughts and motivations is in tension with *Arlington Heights*. In that case, in the context of discussing "subjects of proper inquiry in determining whether racially discriminatory intent" on the part of a municipality existed, the Supreme Court observed:

> The legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports. In some *extraordinary instances* the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege.

*Arlington Heights*, 429 U.S. at 268 (emphasis added). In a footnote, the Court elaborated:

> This Court has recognized, ever since Fletcher v. Peck, 6 Cranch 87, 130-131, 3 L.Ed. 162 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore usually to be avoided.

*Id*. at 268 n.18 (citation and internal quotation marks omitted). The plaintiff seeks to obtain Donoghue's *testimony* as to his motives and thoughts regarding the City's policies for the allocation of NRT permits. In *ACORN*, in denying the plaintiff's motion to compel the testimony of a legislator in part on the basis of *Arlington Heights*, the court noted that "neither plaintiffs' submissions nor the court's own research has identified a single case in which the seriousness of the litigation overrode the assertion of legislative privilege as to *testimony* regarding a legislator's motivations." *ACORN*, 2007 WL 2815810, at *3 (emphasis added).

13

The plaintiff does cite two cases postdating *ACORN* in which courts permitted the taking of a legislator's testimony in the face of invocation of the legislative privilege: *East End* and *Hobart v. City of Stafford*, 784 F. Supp.2d 732 (S.D. Tex. 2011). *See* Plaintiff's Brief at 3-5; Plaintiff's Resp. at 3; *East End*, 2011 WL 6337708, at *4 ("Because the subject matter on which Plaintiffs seek testimony is one of the central issues in this case, the legislative privilege is inapplicable."); *Hobart*, 784 F. Supp.2d at 765-66 (denying motions by city council members to quash deposition notices).[2] However, *East End* is unpersuasive, on the basis of which I decline to follow it, and *Hobart* is materially distinguishable.

As the defendant observes, *see* Defendant's Resp. at 2, in *Favors I*, the United States District Court for the Eastern District of New York essentially disavowed its holding in *East End* that there was a central issues exception to the application of legislative privilege, explaining:

> This Court recognizes that . . . at least one court in this District has held [in *East End*] that the legislative privilege does not apply in situations where the legislative deliberations are among the central issues in the case. This central-issue exception is based on case law arising under the related deliberative process privilege, which protects the decisionmaking processes of the *executive branch* in order to safeguard the quality and integrity of governmental decisions. Like the legislative privilege, the deliberative process privilege is a qualified privilege which may be overcome upon a showing that the adverse party's need for disclosure outweighs the interest in confidentiality; however, its protections are decidedly less robust. Although many courts have conflated the two privileges, the existence of rule-swallowing exceptions like the central-issue exception is an obvious, but not exclusive, reason to differentiate them. Indeed, were the central-issue exception a basis for denying a defendant's legislative privilege claim, there would be few, if any, cases in which state legislators could shield their personal thought processes from view. As a result, this Court declines to import the broad exceptions of the deliberative process

---

[2] The remaining cases that the plaintiff cites concern the production of documents. *See* Plaintiff's Brief at 3-5; Plaintiff's Resp. at 3; *BBC Baymeadows, LLC v. City of Ridgeland, Miss.*, Civil Action No. 3:14CV676-HTW-LRA, 3:14CV938-HTW-LRA, 2015 WL 5943250, at *7 (S.D. Miss. Oct. 13, 2015) (granting in part motions to compel production of documents); *Bethune-Hill*, 2015 WL 3404869, at *20 (granting in part motion to compel production of documents); *Veasey*, 2014 WL 1340077, at *4 (granting in part motion to compel production of documents); *Favors v. Cuomo* ("*Favors I*"), 285 F.R.D. 187, 225 (E.D.N.Y. Aug. 10, 2012) (deferring ruling on motions for protective orders pending *in camera* review of documents); *Mr. & Mrs. B v. Board of Educ. of Syosset Cent. Sch. Dist.*, 35 F. Supp.2d 224, 231 (E.D.N.Y. 1998) (granting in part motion to compel production of documents in face of assertion of deliberative process privilege).

> privilege into the present analysis. In this Court's view, absent a waiver, the appropriate approach is to perform the five-factor balancing, with the centrality of the legislative deliberations to the litigation serving as a persuasive, but not dispositive factor.

*Favors I*, 285 F.R.D. at 210 n.22 (citations and internal punctuation omitted) (emphasis in original). While the *Favors I* court addressed a bid to obtain documents, *see id*. at 220-21, its concern for the "rule-swallowing" nature of the central issue exception is even more pronounced with respect to testimony. Pursuant to that exception, a plaintiff routinely would be able to compel a legislator's testimony as to his or her motivations and thoughts in carrying out legislative duties, rather than rarely, as envisioned in *Arlington Heights*.

While, in *Hobart*, the court applied the five-factor balancing test rather than a central issue exception, its decision is materially distinguishable on two grounds: that the plaintiffs had no alternative means to obtain evidence bearing on whether the chief of police was the relevant final policymaker for purposes of their claim of municipal liability, and that their inquiry into that subject matter did not delve into legislators' motives or thought processes. *See Hobart*, 784 F. Supp.2d at 764-66.

In short, while this litigation is a serious and important one, this factor is not decisive in the plaintiff's favor in view of the availability of other evidence and the fact that the plaintiff seeks Donoghue's testimony as to his thoughts and motivations, an area in which the protections of the legislative privilege are at their zenith.

    4.    *Role of the Government in the Litigation*. The defendant states that this factor presumably is not in dispute, given its role as defendant. *See* Defendant's Brief at 5 n.3. The plaintiff contends that this factor favors him in that, where, as here, the defendant is the legislature, rather than individual legislators and the decision-making process lies at the core of the plaintiff's claims, the privilege should yield. *See* Plaintiff's Brief at 4 (citing *Bethune-Hill*, 2015 WL

3404869, at *13; *Favors I*, 285 F.R.D. at 220). Even assuming that this factor favors the plaintiff, it is not dispositive.

      5.    *Chilling Effect on Legislators*. The defendant contends that "compelling Councilor Donoghue to submit to questioning about his subjective intent and motivations as a Councilor would surely have the undesirable effect of causing timidity among councilors in carrying out their legislative duties." Defendant's Brief at 5 (footnote omitted). Relying on *Arlington Heights*, it contends that the plaintiff has failed to establish that this is an "extraordinary instance" in which compelling interests favor overcoming the privilege. *Id*. at 5; *Arlington Heights*, 429 U.S. at 268 & n.18.

By contrast, the plaintiff contends that, while the privilege protects both a "distraction" interest (to spare legislators from the burdens of compulsory process) and a "legislative independence" interest (to encourage legislators to engage in the legislative process without fear of personal consequences), a brief reopening of Donoghue's deposition would scarcely be burdensome in circumstances in which he has already voluntarily appeared for a deposition, and the "legislative independence" interest is "substantially lowered when individual legislators are not subject to liability." Plaintiff's Brief at 4 (quoting *Bethune-Hill*, 2015 WL 3404869, at *14). The defendant rejoins that the fact that Donoghue appeared voluntarily, as a matter of courtesy and procedural cooperation, does not establish that he was unburdened by submitting to hours of questioning during his first deposition, let alone that submitting to a second deposition would not be burdensome. *See* Defendant's Resp. at 2.

As discussed above, *Arlington Heights* recognizes that compelling the testimony of a legislator regarding his or her motivations and thoughts in performing legislative duties has a chilling effect on the legislative process. In addition, the defendant represents, and it stands to

reason, that there is at least some burden in compelling Donoghue to submit to an additional deposition. Consideration of this factor, hence, favors the defendant.

## IV.    Conclusion

Because, as discussed above, the legislative privilege applies to the subject matter at issue, Donoghue has not waived it, the plaintiff did not timely raise this discovery dispute and, in any event, a balancing of the relevant factors favors the defendant, the plaintiff's motion to compel further testimony of Donoghue is ***DENIED***.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 31st day of December, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge